IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HUGO HOLMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 09-CV-2481 |
| | ) | |
| CITY OF CHICAGO, ET AL., | ) | Judge Robert M. Dow, Jr., |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Hugo Holmes sued the City of Chicago and Chicago Police Officers Michelle Acosta, Eugene Herrera, Jr., Jonathan Matich, Veronica Coffee, Marilyn Drish, and Patricia Ferraro for violations of state and federal law stemming from his arrest on April 25, 2008. On November 12, 2013, Officers Marilyn Drish and Patricia Ferraro were dismissed from this case pursuant to stipulation by the parties. The remaining Defendants have moved for summary judgment on all counts (Counts II and III) against Officers Herrera, Matich, and Coffee, but concede that factual issues exist with respect to certain of Plaintiff's claims against Officer Acosta (also Counts II and III).[1] For the reasons set forth below, the Court grants in part Defendants' motion for summary judgment [178] and also grants Plaintiff's motion for leave to file a sur-reply [208].

---

[1] Count I alleges liability on the part of Defendant City of Chicago. Defendant City of Chicago moved to bifurcate [50] Plaintiff's *Monell* claims against the City from the constitutional claims against the individual Defendant Police Officers and to stay discovery against it on the *Monell* claims until the resolution of all claims against Defendant Officers. On April 14, 2011, the Court granted the City's motion pursuant to the parties' agreement to bifurcate discovery. See [52].

**I.      Factual Background[2]**

On the morning of April 25, 2008, Plaintiff Hugo Holmes was arrested and charged with solicitation of a sex act. At the time of Plaintiff's arrest, Officers Michelle Acosta, Eugene Herrera, Jonathan Matich and Veronica Coffee were conducting a "prostitution solicitation sting," in which the officers make arrests of persons who are alleged to have solicited a sex act from a police officer who is impersonating a prostitute. Officer Acosta's role was to act as a "decoy" prostitute and signal in the event that a person solicited her for a sex act. Officer Acosta testified that she would have "flagged" Officer Herrera if a deal had been made, and Officer Herrera testified that Officer Acosta "would wave her hand, take her hat off, blow a kiss, whatever we determined that day we were going to do" to signal that she had probable cause to arrest an individual for solicitation. Officer Acosta testified that she did not wear a wire or have a radio on her person on the morning of April 25.[3] Officer Herrera's role was to watch for Officer Acosta's signal in the event a person solicited a sex act.[4] His role was also to protect Officer Acosta's safety. Although he does not recall where he stood during this incident, Officer Herrera typically would position himself so that he could see Officer Acosta while at the same time not be detected as a police officer by a person who might solicit a sex act from Officer Acosta. Officers Matich and Coffee were to park in their unmarked police car out of sight of a

---

[2] Plaintiff has supplemented his deposition testimony with an affidavit. Plaintiff's affidavit does not appear to materially contradict his deposition testimony such that his affidavit should be disregarded. See *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. Ill. 2005) ("Although at the summary judgment stage we must interpret the evidence in the light most favorable to [the plaintiff] that does not allow her to contradict deposition testimony with later-filed contradictory affidavits."). If portions of his affidavit did contradict, rather than supplement, his deposition testimony, and also were material to the Court's analysis, those portions of his affidavit would be disregarded.

[3] Plaintiff admits that when Officer Acosta solicited him on April 25, 2008, Plaintiff did not see a police radio, cell phone, or any device that could record or transit the audio of their interaction. However, Plaintiff testified that he heard Officer Acosta's voice transmitting audio after he was arrested and placed in the squad car.

[4] Officer Herrera testified that he trained Officers Acosta and Coffee.

potential offender and wait for a radio transmission from Officer Herrera indicating that a person had solicited a sex act from Officer Acosta.

On April 25, 2008, at approximately 8:30 a.m., Plaintiff Hugo Holmes was driving his 2006 GMC pickup truck eastbound on 47th Street. Plaintiff was a Field Service Supervisor of the Chicago Department of Transportation's (CDOT's) Division of Infrastructure Management, for CDOT's Central District. In the course of performing his field monitoring and inspections, Plaintiff used his own vehicle and was reimbursed by CDOT for his mileage. On April 25, 2008, Plaintiff was working in the Central District, which included the intersection of 47th Street and Washtenaw Avenue. After passing the intersection of 47th and Washtenaw, Plaintiff drove around the block as follows: he took a left turn on Talman Avenue (the next block east from Washtenaw) and proceeded one block north to 46th Street, Plaintiff turned left and proceeded one block west on 46th Street to Washtenaw Avenue, and Plaintiff then took another left turn and proceeded one block southbound on Washtenaw Avenue until he came to a stop at approximately 4658 S. Washtenaw Avenue.

Plaintiff testified that a woman walked toward his pickup truck while he was stopped on Washtenaw and 47th Street and stated "$20 for a blowjob?" Plaintiff denies that he solicited a sex act and further testified that he ignored Officer Acosta's solicitation with disgust and a dismissive gesture, telling her "I'm working." Officer Acosta testified that Plaintiff offered her $20 in exchange for "head" and to "lick her titty." Plaintiff did not see Officer Acosta wave or gesture with her hand when he was stopped and he did not look back at her when he drove away. Officer Acosta testified that she signaled to Officer Herrera that Plaintiff had solicited her for a sex act. Officer Herrera then told Officers Matich and Coffee over the radio that Officer Acosta

was solicited for a sex act by Plaintiff (although they did not know Plaintiff's name at the time). According to Defendant Officers, Herrera would have identified Plaintiff's vehicle.

Officers Matich and Coffee had backed their unmarked police car into an alley off of Washtenaw south of 47th Street. Plaintiff drove his pickup truck across 47th Street and southbound on Washtenaw. Officers Matich and Coffee pulled their unmarked police car out of the alley and stopped Plaintiff. Officers Matich and Coffee advised Plaintiff that he was under arrest, and Officer Matich put the handcuffs on Plaintiff and placed him into the back seat of the police car. Plaintiff was transported to the 9th District Police Station by Officers Marilyn Drish and Patricia Ferraro. Plaintiff was charged with solicitation of a sex act in violation of 720 ILCS 5/11-14.1-A, and his car was impounded pursuant to Chapter 8-8-060 of the Chicago Municipal Code. Plaintiff remained in police custody until he posted bond at approximately 4:00 p.m. on April 25, 2008.

Officer Acosta prepared and signed the vice case report. Officer Matich is listed as the attesting officer on the arrest report. Officer Acosta was identified as the "first arresting officer" on the arrest report and Officer Herrera was identified as the "second arresting officer." Officers Matich and Coffee are identified as "assisting arresting officers." Officer Matich relied upon Officer Acosta's statement as to the communication between her and Plaintiff to complete the substantive part of the narrative of the arrest report relative to the solicitation of a sex act. Subsequent to the arrest of Plaintiffs, Defendant Officers' supervisors instructed Defendant Officers to discontinue prostitute solicitation sting operations.

On September 29, 2008, the case of *People v. Hugo Holmes*, No. 08-1-222-705-01 was called in Branch 46 of the Circuit Court of Cook County, Municipal Department, 555 W. Harrison Street, Chicago, Illinois. The case was passed by the Court after a discussion on the

record. The docket indicates the case was recalled and stricken with leave to reinstate later that same day. Officer Acosta testified she was present in court that morning.

## II. Standard of Review

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual disputes that are irrelevant to the outcome of the suit "will not be counted." *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003) (quotation marks and citations omitted). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-

movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III. Analysis

### A. Plaintiff's False Arrest and Malicious Prosecution Claims

Plaintiff brings a § 1983 claim against Defendant Officers for false arrest in violation of the Fourth Amendment and state law claims for false arrest/imprisonment and malicious prosecution. To prove a claim under § 1983 against the officers, Plaintiff must show that a person acting under color of state law deprived him of a right, privilege, or immunity secured either by the Constitution or federal law. See, *e.g. Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). Defendant Officers do not dispute that they were acting under color of state law at the time of Plaintiff's arrest. Further, Defendant Officer Acosta concedes that a question of fact exists as to whether Plaintiff solicited a sex act from her on April 25, 2008, and therefore summary judgment is not appropriate as to Plaintiff's false arrest or malicious prosecution claims against Defendant Acosta. However, the remaining Defendants argue that they had probable cause for Plaintiff's arrest and seek summary judgment as to Plaintiff's state and federal claims for false arrest and malicious prosecution.

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (citing *Potts v. City of Lafayette*, 121 F.3d 1106, 1113 (7th Cir. 1997)). "This is so even where the defendant officers allegedly acted upon a malicious motive." *Id*. (citing *Simmons v. Pryor*, 26 F.3d 650, 654 (7th Cir. 1993)). Police officers have probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to

warrant a prudent person in believing that the suspect had committed" an offense. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). The Court evaluates probable cause "not on the facts as an omniscient observer would perceive them," but rather "as they would have appeared to a reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard." *Id.*; see also *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000); *United States v. Reis*, 906 F.2d 284, 289 (7th Cir. 1990) (courts determine the existence of probable cause by applying an objective standard; it is the mindset of the "reasonable officer" and not of the actual arresting officer that matters). The test, an objective one, is whether a reasonable officer would have believed the person had committed a crime. If the test is satisfied "the arrest is lawful even if the belief would have been mistaken." *Kelly*, 149 F.3d at 646. Thus probable cause has been described as a zone within which reasonable mistakes will be excused. *Id*.

When law enforcement officers are in communication regarding a suspect, the knowledge of one officer can be imputed to the other officers under the collective knowledge doctrine. The collective knowledge doctrine provides:

> The police who actually make the arrest need not personally know all of the facts that constitute probable cause if they reasonably are acting at the direction of another officer or police agency. In that case, the arrest is proper so long as the knowledge of the officer directing the arrest, or the collective knowledge of the agency he works for, is sufficient to constitute probable cause.

*Tangwall v. Stuckey,* 135 F.3d 510, 517 (7th Cir. 1998) (emphasis removed) (quoting *United States v. Valencia*, 913 F.2d 378, 383 (7th Cir. 1990)); see also *United States v. Williams,* 627 F.3d 247, 252 (7th Cir. 2010) ("The collective knowledge doctrine permits an officer to * * * arrest a suspect at the direction of another officer * * * even if the officer himself does not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action.") (citing *United States v. Hensley,* 469 U.S. 221, 232–33 (1985)); *U.S. v. Nicksion*, 628

F.3d 368, 376 (7th Cir. 2010) (same).  The doctrine derives from the Supreme Court's decision in *United States v. Hensley,* 469 U.S. 221 (1985), where the Court held that "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." *Id.* at 231 (citations omitted).  The Seventh Circuit has recognized two situations where the collective knowledge doctrine usually applies:  where police departments or agencies transmit information across jurisdictions, and where officers communicate with each other at the scene of an arrest.  See *United States v. Parra,* 402 F.3d 752, 764 (7th Cir. 2005).  The present case involves the latter situation.

Defendants maintain that Officers Herrera, Matich, and Coffee are entitled to summary judgment on Plaintiff's false arrest claim because they had probable cause to arrest Plaintiff based on the signal from Officer Acosta.  As Defendants point out, none of these officers participated in the conversation between Plaintiff and Officer Acosta that led to Plaintiff's arrest for solicitation.  Instead, Officer Herrera relied on Officer Acosta's signal that Plaintiff had solicited a sex act, and Officer Herrera then radioed to Officers Matich and Coffee that Plaintiff solicited Acosta.  Officers Matich and Coffee then arrested Plaintiff based on Officer Herrera's radio call indicating that Acosta had signaled that Plaintiff solicited her.  Further, Officer Matich wrote the arrest report based upon the statement of Officer Acosta that Plaintiff had offered $20 for "head" and to "lick titty."  Thus, even though Officers Herrera, Matich, and Coffee did not hear for themselves the conversation between Plaintiff and Acosta, Defendants contend that Officer Acosta's hand signal (a signal that Officer Herrera knew meant a solicitation had occurred) was a sufficient basis for Officer Herrera to believe that there was probable cause to

arrest Plaintiff and to communicate that probable cause determination to Officers Matich and Coffee. See *United States v. Tharp*, 2013 WL 6524631, at *6-7 (E.D. Wis. Dec. 12, 2013) (applying the collective knowledge doctrine and concluding that arresting officers, who were waiting a block away from the decoy officer, properly arrested the plaintiff for solicitation based only on the decoy officer's hand signal).

Plaintiff contends that under the collective knowledge doctrine, if Officer Acosta did not have probable cause to arrest Plaintiff, then none of the other officers had probable cause to arrest plaintiff. Plaintiff claims that the other officers are "bound by Officer Acosta's own knowledge," even if only the probable cause signal, and not the underlying facts, were communicated to them. Pltf.'s Resp. at 3. That principle is true when collective knowledge is applied in a criminal case—if the facts observed by the initial officer do not support a finding of probable cause, then there was no probable cause, even if the later-arriving arresting officer was reasonable in his belief that there was probable cause based on the initial officer's communication of her conclusion. See *Parra*, 402 F.3d 752, 764 (7th Cir. 2005); *Nafzger*, 974 F.2d at 911. But for purposes of civil liability, the issue is not whether the information actually possessed by the observing officer is sufficient to support probable cause, but whether each individual defendant officer reasonably believed there was probable cause to arrest plaintiff. See *Gray v. Burke*, 466 F. Supp. 2d 991, 996 (N.D. Ill. 2006). Here, a question of fact exists as to whether Officer Acosta's probable cause determination was reasonable. However, what was known by Officer Herrera (and then subsequently conveyed to Officers Matich and Coffee) was that Acosta signaled the existence of probable cause for Plaintiff's arrest. Officer Acosta's liability will hinge on whether she actually had probable cause, but the civil liability as to Officers Herrera, Matich, and Coffee rests on "the facts and circumstances within their

9

knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed" an offense. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). Unlike in the criminal context, the test here is an objective one: whether a reasonable officer would have believed the person had committed a crime. If the test is satisfied, "the arrest is lawful even if the belief would have been mistaken." *Kelly*, 149 F.3d at 646.

Stated slightly differently, the reasonableness of a seizure turns on what the officer "knew" at the time of the arrest, "not whether he knew the truth or should have known more." *Carmichael v. Village of Palatine*, 605 F.3d 451, 457-58 (7th Cir. 2010) (officer who maintained that reason for stopping car was because of inoperative tail and brake lights did not have probable cause to effectuate arrest of Plaintiff for tinted windows and absence of front license plate because there was no evidence that arresting officer knew the car had tinted windows or was missing a front license plate); see also *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007) ("The fact that an officer later discovers additional evidence unknown to her at the time of the arrest * * * is irrelevant—we only care about what the officer knew at the time the decision was made."). Here, what was known to Officers Herrera, Matich, and Coffee was that Officer Acosta had signaled that Plaintiff solicited her for sex. As explained by the Supreme Court in *Whren v. United States,* whether an action is reasonable under the Fourth Amendment is determined objectively "whereby, 'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'" Thus, a court looks at whether a reasonable officer with the same information known to Defendant Officers at the time of incident would have had probable cause to arrest Plaintiff.

10

Here, what was "known" to Officers Herrera, Matich, and Coffee was that probable cause had been established. See also *People v. Bramlett*, 793 N.E.2d 203, 211-12 (Ill. App. Ct. 1st Dist. 2003) ("When officers are working in concert, probable cause to arrest can be established from all the information collectively received by the officers even if that information is not specifically known to the officer who makes the arrest."); *Carter v. City of Chicago*, 2004 WL 1093718, at *3 (N.D. Ill. May 3, 2004) ("When officers are working in concert on an investigation, probable cause for an arrest may be established by information possessed by any of those officers.").

Viewing all of the evidence presented at summary judgment, the Court concludes that the moving Defendants' belief that there was probable cause was consistent with their perception of the events leading to Plaintiff's arrest. Plaintiff makes attenuated inferences regarding what the officers were able to observe at the scene, but the reasonable inferences made from Plaintiff's own account of the incident do not undercut the evidence of record. See *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987) (a court is not required to draw every conceivable inference; it should draw only reasonable inferences). For instance, Plaintiff relies upon his allegation that, while sitting in Officer Matich and Coffee's squad car after his arrest, he heard a radio transmission relating to a subsequent arrest. Plaintiff claims he heard Officer Acosta saying: "here comes another one and, oh, no, he's going through the – oh, no, he's going about his business" and "here comes a black Marquis * * * it's a go, black Marquis," and "here comes another one * * * walking * * * oh, he touched me * * * it's a go * * * he's walking down the street." See Pl.'s Facts ¶ 28. He also claims to have heard a male voice, but does not identify anything that the male voice said.

Plaintiff's allegations regarding a separate arrest do not show, even by inference, that Officers Herrera, Matich, and Coffee were able to hear Plaintiff's interaction with Officer Acosta. Even assuming (without the necessary foundation) that it was Acosta's voice being transmitted via the radio, Plaintiff's contention about subsequent arrests does not create an issue of fact with respect to his arrest. There simply is no evidence in the record that Acosta was transmitting audio at the time of her interaction with Plaintiff. The fact that Plaintiff claims that he heard Officer Acosta's voice on the subsequent arrests of other people does not prove anything with respect to Plaintiff's arrest. Moreover, the statements allegedly made by Acosta appear to relate to events that would have occurred before and after she was actually being solicited (*e.g.*, "here comes another one" and it's a go * * * he's walking down the street"). Further, Plaintiff does not claim to have heard any statements by the other offenders. Thus, the evidence of what Plaintiff overheard, if true, shows only that Officer Acosta had access to a radio, not necessarily her own, before and after her interactions with other solicitors. At best, this leads to an inference that Officer Acosta had access to a radio to use before and after Plaintiff's solicitation. Any further inference would be impermissible speculation. There simply is insufficient evidence that Officers Herrera, Matich, and Coffee overheard the interaction between Plaintiff and Officer Acosta and thus would have had knowledge of Plaintiff's version of the interaction.[5]

Having determined that Officers Herrera, Matich, and Coffee had probable cause to arrest Plaintiff based on what they "knew" at the time of his arrest, the Court need not reach the question of whether these Defendants are entitled to the "additional layer of protection against civil liability" provided by qualified immunity. See *Carmichael*, 605 F.3d at 459. However, it is

---

[5] It undisputed that Plaintiff did not see a police radio, cell phone, or any other audio recording or transmitting device on Officer Acosta. Further, Officer Acosta testified without contravention that she was not wearing a wire and did not have a radio on her person at the time of her interaction with Plaintiff.

worth noting that that some courts have conflated the collective knowledge and qualified immunity doctrines and held that "[i]n a civil case for an arrest without probable cause, the collective knowledge doctrine means a defendant is entitled to qualified immunity if he relied in objective good faith on another officer as to the justification for the arrest." See *Graham v. Blair,* 2011 WL 6888528, at *6 (S.D. Ill. Dec. 28, 2011); see also *Crawford v. City of Chicago*, 2014 WL 1661720, at *6 (N.D. Ill. 2014); *McCoy v. City of Fort Wayne*, 2012 WL 1714355, at *11-13 (N.D. Ind. 2012). Thus, as set forth below, even if this Court's probable cause inquiry is erroneous, and the inquiry instead should focus on the qualified immunity doctrine, Officers Herrera, Matich, and Coffee all would be entitled to qualified immunity.

The doctrine of qualified immunity shields from liability police officers who perform discretionary duties and who act in ways they reasonably believe to be lawful. See *Chelios v. Heavener,* 520 F.3d 678, 690–91 (7th Cir. 2008). "The defense provides 'ample room for mistaken judgments' and protects all but the 'plainly incompetent and those who knowingly violate the law.'" *Wheeler v. Lawson,* 539 F.3d 629, 639 (7th Cir. 2008) (citing *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 343 (1986))). In short, qualified immunity works as a shield if a reasonable officer could have believed Plaintiff's arrest to be lawful in light of clearly established law and the information that Herrera, Matich, and Coffee possessed. *Id.* As the Supreme Court reaffirmed in *Pearson v. Callahan*, two questions are pertinent to the defense of qualified immunity: whether the alleged facts show that the state actor violated a constitutional right and whether that right was clearly established at the time of the alleged violation. 555 U.S. 223, 232 (2009) (discussing *Saucier v. Katz,* 533 U.S. 194 (2001)). Therefore, if the facts alleged show that the state actors did not violate a

constitutional right, or if that right was not clearly established at the time of the alleged violation, the defense of qualified immunity applies. *Id.* at 232–33.

As the Court concluded above, Officers Herrera, Matich, and Coffee had probable cause to arrest Plaintiff for solicitation. Nonetheless, even if they somehow did not have probable cause to arrest Plaintiff, they still would be entitled to qualified immunity. While "[t]here is no question that [Plaintiff's] right to be free from arrest without probable cause was clearly established at the time of the incident," "a defendant is entitled to qualified immunity in a false-arrest case when, if there is no probable cause, 'a reasonable officer could have mistakenly believed that probable cause existed.'" *Fleming v. Livingston Cnty., Ill.,* 674 F.3d 874, 879–80 (7th Cir. 2012) (quoting *Humphrey v. Staszak,* 148 F.3d 719, 725 (7th Cir. 1998)). "[W]here a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed." *Duran v. Sirgedas,* 240 F. App'x 104, 115 (7th Cir. 2007) (unpublished) (quoting *Rogers v. Powell,* 120 F.3d 446, 455 (3d Cir. 1997)).

The question therefore becomes whether it was objectively reasonable for Officers Herrera, Matich, and Coffee to rely on Acosta's signal as a basis for believing that probable cause existed for Plaintiff's arrest. *Id.* Herrera personally observed Plaintiff stop his truck in front of Acosta, Acosta approach Plaintiff, and then Acosta give the signal for solicitation. Because Defendant Officers had performed this operation numerous times, and Herrera knew what signal to look for, it was objectively reasonable for him to believe that Acosta's signal for solicitation meant in fact that Plaintiff has solicited her and there was probable cause to arrest Plaintiff. Moreover, since Plaintiff was inside his vehicle and could

easily drive away, Officers Matich and Coffee did not have much time to reflect or make further inquiries concerning the existence of probable cause if they were expected to apprehend Plaintiff. Accordingly, because it was objectively reasonable for Defendant Officers Herrera, Matich, and Coffee to believe that probable cause existed for Plaintiff's arrest, they also are entitled to qualified immunity.

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa*, 442 F.3d at 547. Thus, the Court grants summary judgment to Defendant Officers Herrera, Matich, and Coffee on Plaintiff's state and federal false arrest/imprisonment and malicious prosecution claims. Alternatively, the Court concludes that Defendant Officers Herrera, Matich, and Coffee are entitled to qualified immunity for their conduct during Plaintiff's arrest and subsequent prosecution. Plaintiff's false arrest and malicious prosecution claims against Defendant Acosta remain pending.[6]

### B. Due Process Claims

In Count II of the complaint, Plaintiff alleges that he was deprived of rights under the United States Constitution, "including but [sic.] limited to, the Fourth and Fourteenth Amendments thereof." Compl. ¶ 28. Notably, Plaintiff failed to address Defendants' arguments in support of summary judgment on the portion of Count II that alleges a Fourteenth Amendment due process violation. Therefore, Plaintiff has waived any argument in opposition to summary

---

[6] Defendants briefly challenge Plaintiff's malicious prosecution claim against Defendant Acosta, claiming that the proceedings against Plaintiff were not terminated in a manner indicative of innocence. Defendants' argument is not persuasive at this juncture. At a minimum, there is a question of fact as to why the proceedings were terminated, and therefore summary judgment is not appropriate on Plaintiff's malicious prosecution claim against Defendant Acosta. Further, although Plaintiff's state law false arrest/imprisonment claim appears duplicative of his federal false arrest claim, the Court will not grant summary judgment on the claim at this time. If it is indeed duplicative, Defendants may move to strike the claim prior to trial.

judgment on this claim. See *Ienco v. Angarone,* 429 F.3d 680, 684 (7th Cir. 2005) (finding that plaintiff waived claims by failing to develop them in response to the defendant's motion for summary judgment); *Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir. 1995) ("We have made it clear that a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point."); see also *Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 854 (7th Cir. 1998) ("This court has refused to consider unsupported or cursory arguments.").

In any event, any such claim could not survive summary judgment on this record. First, Plaintiff has not identified any material and exculpatory evidence that the Defendant Officers allegedly withheld. Plaintiff claims he did not solicit a sex act and the charges against him were based on a false arrest report. The alleged false arrest report cannot be considered evidence that was suppressed because it was available to Plaintiff. *Carvajal v. Dominguez*, 542 F.3d 561, 567 (7th Cir. 2008) (noting that officers "were accessible to the defense for the hearing on the motion to suppress the identification in the criminal case"); see also *Harris v. Kuba,* 486 F.3d 1010, 1015 (7th Cir. 2007) (holding that evidence was not suppressed where evidence was "available to Harris and his counsel with minimal research or discovery through the exercise of reasonable diligence."); *U.S. v. Seifling*, 504 F.3d 672, 679 (7th Cir. 2007). Plaintiff has not identified any material evidence that was suppressed, and there is none in the record. Second, even if Plaintiff could show the suppression of material evidence, a due process claim still would not be viable because Plaintiff did not face trial on the prostitution charge against him. See *Alexander v. McKinney*, 692 F.3d 553, 557 (7th Cir. 2012) (clarifying that a defendant's due process rights are not violated unless fabricated evidence is used to wrongfully convict or incarcerate him); *Albright v. Oliver*, 510 U.S. 266, 274 (1994). Thus, even under the most strained interpretation

of *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, Plaintiff simply does not have a due process claim.

   C.   **Conspiracy Claims**

In their motion for summary judgment, Defendant Officers contend that Plaintiff has failed to adduce any evidence of a conspiracy. In his response, Plaintiff does not address his conspiracy claims and he therefore has waived any argument in opposition to summary judgment. See *Ienco v. Angarone,* 429 F.3d 680, 684 (7th Cir. 2005) (finding that plaintiff waived claims by failing to develop them in response to the defendant's motion for summary judgment). Further, "conspiracy is not an independent basis of liability in § 1983 actions." See *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). In the Seventh Circuit, if a plaintiff fails to establish an underlying constitutional violation, any corresponding conspiracy claim also necessarily fails. See *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). As set forth above, the evidence does not support a claim of a constitutional violation against Officers Matich, Herrera, or Coffee.

Moreover, Plaintiff has failed to come forward with any evidence that Defendant Officers entered into an express or implied agreement with each other to deprive Plaintiff of his constitutional rights and that there was an actual deprivation of those rights in the form of overt acts in furtherance of the agreement. *Lyons v. Adams*, 257 F. Supp. 2d 1125, 1134 (N.D. Ill. 2003) (citing *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988)); *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill.2d 12, 23 (Ill. 1998) (noting that to prevail on a state law conspiracy claim, plaintiff must demonstrate "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means"). The evidence of record does not demonstrate how Defendant Officers formed a

conspiracy against Plaintiff. Because Plaintiff has failed to adduce any evidence of a conspiracy among any of the Defendant Officers, including Officer Acosta, summary judgment is granted in favor of all Defendants on Plaintiffs' conspiracy claims under § 1983 and state law.

**D.     State Law Claims**

All of the Defendants also have moved for summary judgment on Plaintiff's claims for abuse of process, battery, and assault, and Defendants Herrera, Matich, and Coffee additionally have moved for summary judgment on Plaintiff's claim of intentional infliction of emotional distress. Once again, Plaintiff has failed to address these arguments. Rather than addressing the merits of the claims, Plaintiff argues that he cannot adequately address the state law claims in his summary judgment response due to page limit constraints. Yet Plaintiff did not seek leave to file excess pages, a request that the Court routinely grants. Further, Plaintiff contends that he was deprived of evidence in support of his state law claims due to the Court's bifurcation of the *Monell* claim. See Pl.'s Resp. at 14. Yet Plaintiff does not identify what further evidence is needed. Nor did Plaintiff raise this issue during the discovery period. Moreover, Plaintiff's argument tacitly suggests that he intends to improperly use policy and practice evidence in support of his state law claims against the individual defendants. Plaintiff's hollow attempt to avoid summary judgment on these state law claims fails. Thus, the Court will enter summary judgment in favor of all Defendants on Plaintiff's state law claims for abuse of process, battery, assault, and conspiracy. Additionally, the Court will enter summary judgment in favor of Defendants Herrera, Matich, and Coffee on Plaintiff's state law claims for malicious prosecution, false arrest/imprisonment, and intentional infliction of emotional distress.

### E. "Unknown Officers"

In addition to the named Defendants, Plaintiff also has sued "Unknown Officers." Dismissal of unknown defendants is appropriate where a plaintiff fails during the discovery period to identify the unknown parties. See *Williams v. Rodriguez*, 509 F.3d 391, 402 (7th Cir. 2007) (noting that discovery is a plaintiff's opportunity to identify unknown and unnamed defendants and that the failure to do so before discovery closed warranted dismissal of unknown and unnamed defendants from the case); *Strauss v. City of Chicago*, 760 F.2d 765, 770 n. 6 (7th Cir. 1985) (concluding that dismissal was proper where plaintiff did not name "John Doe" defendant and noting that a plaintiff has the responsibility of taking the steps necessary to identify the officer responsible for his injuries); *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (noting that it is "pointless to include lists of anonymous defendants in federal court"). Here, discovery is closed and Plaintiff has not identified any unknown officers or pointed to any misconduct of any unknown officer. Plaintiff also has not offered any argument in opposition to the dismissal of all claims against these "Unknown Officers." Therefore, the Court dismisses the "unknown officers" from this case.

## III. Conclusion

For these reasons, the Court grants in part Defendants' motion for summary judgment [178]. The Court dismisses all of Plaintiff's claims against Defendants Herrera, Matich, and Coffee and also dismisses Plaintiff's claims against "Unknown Officers." The Court also dismisses Plaintiff's federal due process and conspiracy claims against Defendant Acosta as well as Plaintiff's state law claims for abuse of process, battery, assault, and conspiracy against Defendant Acosta. Plaintiff's false arrest/imprisonment (state and federal), malicious prosecution, and intentional infliction of emotional distress claims remain pending against

Defendant Acosta.  The Court also grants Plaintiff's motion for leave to file a sur-reply [208].

This case is set for further status hearing on August 26, 2014, at 9:00 a.m.

Dated: August 6, 2014

_____
Robert M. Dow, Jr.
United States District Judge